Scileppi, J. (dissenting).
I am for affirmance for the reasons stated by Presiding Justice Beldock in his majority opinion at the Appellate Division, I merely add the following to further amplify my position.
The sole issue presented for our consideration is whether or not the Board of Education has, in fact, created a new position so as to justify its temporary appointments of persons other *470 than those presently qualified and listed on the civil service list as “ Principal, Day Elementary School”.[1]
It is conceded that the Board of Education has the right pursuant to subdivision 2 of section-2554 of the Education Law to create new positions which in their judgment may be necessary for the proper and efficient administration of its work.
Furthermore, I would agree that temporary appointments are permissible to give the board an adequate opportunity to prepare a new examination designed to establish a “ special eligible list ” of persons particularly qualified to fill these “ new ” positions. However, before such action can be lawfully initiated, it is incumbent upon the board to manifest that the qualifications for the new positions are sufficiently distinguishable from the qualifications of those persons presently on the eligible list, so as not to violate their rights under the State Constitution (art. V, § 6; People ex rel. Sweeney v. Rice, 279 N. Y. 70).
The majority states that “ [a]ll of the criteria for testing need not be laid down in detail when the new position is initially created * * * It is enough for a court to be able
to see that by description of function it' was not unreasonable for the board to rule it different from the existing position ”. I am not at variance with this statement. However, it is my opinion, as it was the opinion of the trial court and the majority in the Appellate Division, that the qualifications for the two positions are indistinguishable, and, therefore, the board’s action should be characterized as unreasonable.[2]
The majority states that:
‘ ‘ The board determined that ‘ new techniques and new approaches’ were needed to train staff and for ‘ increasing parental and community involvement. ’ It also determined that *471 in ‘ demonstration ’ schools which were essentially experiments in wider co-operation between the school and the community, the principal should be a person who, having conventional educational qualifications, also understood the cultural strength and energies of the pupils and the community * * *
‘‘ The board was of the opinion that the general training and competitive tests for principals were not addressed to these special needs.”
This is merely a conclusion which is unsupported by the record. There is no showing that the qualifications of those persons presently on the eligible list are insufficient to meet the needs of this “ new ” position. The only possible qualification lacking in those persons presently on the eligible list, that might be culled from the board’s ambiguous description, is that they do not share the same ethnic background as the majority of students attending the schools in question. Such a distinction is clearly violative of not only the Federal (U. S. Const., 14th Amdt., § 1) but our own State Constitution (art. I, § 11) and, therefore, cannot be considered in determining whether a new position has, in fact, been created..
Apparently recognizing the insufficiency of distinction between the two positions, the Board of Education asserts that, since the Demonstration Schools are experimental, the qualifications and duties of the principals are unknown to it and the appointments to the positions were made on a temporary basis specifically to determine from the performance of those appointed what the qualifications and duties should be. If this be the case, then let them find out what the qualifications and duties should be by making their temporary appointments from the persons presently on the eligible list. At the very least, there should be a presumption of competency in favor of those persons on the list until such time as the board evidences that they are unqualified.
Therefore, I would conclude that the temporary appointments by the Board of Education were unlawful and cannot be sustained on the mere possibility that if and when the standards and qualifications are set forth they may manifest sufficient distinction to justify the creation of a new position.
I believe that almost everyone agrees that the ultimate goals sought to be achieved by the experimental project are sound *472 and necessary. However, the right to experiment in our city school system does not carry with it the right to experiment with the constitutional rights of others, no matter how desirable or expedient a particular result might be and, until such time as the board evidences that they can achieve this desirable end through means within the confines of the law, their action cannot be sustained.
Accordingly, I would affirm.
Chief Judge Fuld and Judges Burke, Keating, Breitel and Jasen concur with Judge Bergan ; Judge Scileiti dissents and votes to affirm in a separate opinion.
Order reversed, etc.

. Even the dissenters at the Appellate Division recognized that the distinction drawn between the two positions was insufficient to provide a rational basis for the creation of the • new positions. However, they justified their disagreement with the majority finding the urgency of the times necessitated sustaining the board’s action.